## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| LORI K. NYE, individually and as the natural parent for A.N., a minor child, and B.N., a minor child, <br><br>      Plaintiff, <br><br>      vs. <br><br> RELIANCE STANDARD LIFE INSURANCE COMPANY, <br><br>      Defendants. | Case No.: 3:14-cv-00025-EJL-REB <br><br> **REPORT AND RECOMMENDATION RE: DEFENDANT RELIANCE STANDARD LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT** <br><br> **(Docket No. 19)** |

Now pending before the Court is Defendant Reliance Standard Life Insurance Company's ("Reliance") Motion for Summary Judgment (Docket No. 19). Having carefully reviewed the record, participated in oral argument, and otherwise being fully advised, the undersigned enters the following Report and Recommendation:

## I. BACKGROUND

1. Reliance issued to Clearwater Paper Corp. ("Clearwater"),[1] Policy Number LTD 101141 (the "Policy") to fund disability benefits under the Clearwater disability plan (the "Plan"). *See* Def.'s SOF No. 1 (Docket No. 20).

2. Relevant here, benefits are calculated under the Plan pursuant to the following "benefit provisions" within the Policy:

---

[1] Clearwater was one of the original defendants. On December 8, 2014, the parties stipulated to Clearwater's dismissal with prejudice. *See* Stip. (Docket No. 21).

**REPORT AND RECOMMENDATION - 1**

**MONTHLY BENEFIT:** The Monthly Benefit is an amount equal to:

CLASS 1: 60% of Covered Monthly Earnings for the first 18 months of Total Disability, then 50% of Covered Monthly Earnings, if still disabled, payable in accordance with the section entitled Benefit Amount.

CLASS 3 & 4: 50% of Covered Monthly Earnings, payable in accordance with the section entitled Benefit Amount

***

**INSURING CLAUSE:** We will pay a Monthly Benefit if an Insured:

(1)     is Totally Disabled as the result of a Sickness or Injury covered by this Policy;

(2)     is under the regular care of a Physician;

(3)     has completed the Elimination Period; and

(4)     submits satisfactory proof of Total Disability to us.

***

**BENEFIT AMOUNT:** To figure the benefit amount payable:

(1)     multiply an Insured's Covered Monthly Earnings by the benefit percentage(s), as shown on the Schedule of Benefits page;

(2)     take the lesser of the amount:

    (a)     of step (1) above; or

    (b)     the Maximum Monthly Benefit, as shown on the Schedule of Benefits page; and

(3)     subtract Other Income Benefits, as shown below, from step (2) above

***

**OTHER INCOME BENEFITS:** Other Income Benefits are benefits resulting from the same Total Disability for which a Monthly Benefit is payable under this Policy. These Other Income Benefits are: . . .

**REPORT AND RECOMMENDATION - 2**

    (6)      disability or Retirement Benefits under the United States Social Security Act . . . for which:

        (a)      an Insured is eligible to receive because of his/her Total Disability or eligibility for Retirement Benefits; and

        (b)      an Insured's dependents are eligible to receive due to (a) above.[2]

*Id*. at SOF Nos. 5, 6 & 12 (quoting Ex. A to Pope Aff. at pp. 1.0 & 9.0 (Docket No. 19, Att. 3)).

Moreover, the Policy states that:

If [Reliance] ha[s] overpaid the Monthly Benefit for any reason, the overpayment must be repaid to us. At our option, we may reduce the Monthly Benefit or ask for

---

[2] Pursuant to the "Other Income Benefits" section of the Policy, Reliance is further permitted to estimate the amount of Social Security benefits a claimant may receive prior to an actual award – in turn reducing the monthly disability benefit by the amount of the estimated Social Security benefits. *See* Reply in Supp. of MSJ, pp. 3-4 (Docket No. 28) (citing Ex. A to Pope Aff. at p. 9.0 (Docket No. 19, Att. 3). On October 17, 2009, Plaintiff Lori Nye executed a Reimbursement Agreement, confirming Reliance's right under the Policy to estimate the amount of Social Security benefits, but requesting that Reliance "defer its rights to deduct" such estimates. *See* Ex. A to Reply in Supp. of MSJ (Docket No. 28, Att. 1). Reliance agreed, so long as Ms. Nye complied with following conditions:

    1)      I understand that any LTD benefits payable under the Policy are to be reduced by any amount paid or payable under . . . the Social Security Act . . . for myself and my dependents, and . . . .

    4)      I agree to reimburse the Company for the full amount which may be overpaid to me in the event I am awarded . . . SS . . ., including retroactive awards, in accordance with the terms outlined in paragraph one (1) of this agreement. This overpayment amount must be refunded to the Company within 15 days of receipt of the notification from the Company regarding the overpayment, and

    5)      I agree that if I fail to reimburse the Company in full within 15 days of receipt of notification from the Company regarding my overpayment, that the Company has the right to withhold my monthly LTD benefit until the overpayment is recovered in full. I also agree that the Company will withhold my monthly LTD benefit to recover any attorney fees and costs expended to recover the overpayment.

*Id*.

**REPORT AND RECOMMENDATION - 3**

a lump sum refund.  If we reduce the Monthly Benefit, the Minimum Monthly
Benefit, if any, as shown on the Schedule of Benefits page, would not apply.

*Id*. at SOF No. 7 (quoting Ex. A to Pope Aff. at p. 9.0 (Docket No. 19, Att. 3)).

3.      Ms. Nye was an employee of Clearwater and, in 2009, submitted a claim for

disability under the Plan which was approved; since that time, her disability status has not

changed.  *See id*. at SOF No. 2.

4.      Since Ms. Nye's claim for disability was approved, her benefits have been

recalculated on several occasions.  *See id*. at SOF No. 3

5.      The first Monthly Benefit adjustment occurred in June 2011, based on Ms. Nye's

May 28, 2011 award of Social Security Disability benefits.  *See id*. at SOF No. 8.  Reliance's

June 6, 2011 letter to Ms. Nye stated in relevant part:

> We have received notification that you are receiving other income in the form of
> SSDI, effective June 1, 2009.
>
> As stipulated by the terms of the group policy under which you have been receiving
> Long Term Disability (LTD) benefits, other income and benefits you receive or are
> entitled to receive as a result of your disability reduces the amount of your monthly
> LTD benefit from us.  When other income or benefits are awarded, you may receive
> a payment for an earlier period of time (retroactive, or past benefits).  If your award
> includes benefits for an earlier period of time, or if you receive other income without
> notifying us, an overpayment results on your claim.  This is because you received
> deductible income (stipulated in the terms of your group policy) from another source
> for the same period of time that we paid you a monthly LTD benefit that was not
> reduced by the other monthly income you received or are now entitled to receive.
>
> Now that we have been notified you are receiving other income that is deductible
> from your LTD benefit for a past period of time, an overpayment of your claim has
> occurred.
>
> Your claim has been recalculated taking into account your entitlement to Social
> Security benefits which began on June 1, 2009, at the rate of $2,199.00 per month.
> According to our records, during the period of September 6, 2009 to June 6, 2011,
> we paid you total monthly benefits of $92,583.15.  During this period of time, you
> should have been paid a total of $46,499.07, given that your LTD benefit should

**REPORT AND RECOMMENDATION - 4**

have been reduced by your monthly income from the SS Administration.  You received an attorney credit of $4,500.00.  As such, your claim is overpaid by $41,584.08.

Please send your reimbursement by check or money order, in the amount of $41,584.08 made payable to Reliance Standard Life Insurance Company to repay the overpayment on your claim.  Please be sure to include the claim number on the check or money order.  Your full repayment must be received within 15 days from the date of this letter.  A pre-addressed envelope is enclosed to assist you in mailing your repayment to us.

The group policy requires that we withhold any future benefits payable to you until we receive the overpayment balance.  This does not nullify your obligation to repay the unpaid balance, in full, within 15 days of this letter.  Once the overpayment has been repaid, your monthly LTD benefit will be $2,286.00.

*Id.* at SOF Nos. 8 & 9 (quoting Ex. B to Pope Aff. (Docket No. 19, Att. 4));[3] *see also* Cannon

Aff. at ¶ 4 (Docket No. 32); Ex. B to Cannon Aff. (Docket No. 32, Att. 2) (June 2, 2011 entry on

"Claim Report" indicating "Overpayment Calculation" of $41,584.08).

6.      The second Monthly Benefit adjustment occurred on August 15, 2011 when

Reliance learned of Ms. Nye's June/July 2011 award of Dependent Social Security Disability

benefits in the amount of $1,098.00 per month beginning in June 2009.  *See* SOF No. 10 (Docket

No. 20) (citing Ex. C to Pope Aff. (Docket No. 19, Att. 5).[4]  Based on these *additional* sources of

---

[3]  Reliance's June 6, 2011 letter informed Ms. Nye that she could "request a review of this determination" within 180 days of her receipt of the letter, along with instructions for doing so.  *See* Ex. B to Pope Aff. (Docket No. 19, Att. 4).

[4]  Exhibit C to Mr. Pope's Affidavit is a November 19, 2012 letter from Reliance to Ms. Nye's attorney, Ned Cannon.  *See infra.*  Though there is no explicit reference to an August 2011 time frame contained therein, the letter does discuss Ms. Nye's apparent receipt of Dependent Social Security Disability benefits in the amount of 1,098.00 per month from June 6, 2009 to August 8, 2011.  *See* Ex. C to Pope Aff. (Docket No. 19, Att. 15).  Additionally, Reliance's "Claim Report" contains an August 15, 2011 entry, stating:

Hi Charmaine, This is complete.  The claimant has been awarded Social Security benefits.  Note that prior calculations completed 6/02/11 erroneously did not include

**REPORT AND RECOMMENDATION - 5**

"Other Income," Reliance's overpayment to Ms. Nye rose by $24,849.30, for a total overpayment of $66,433.38.  *See id.*

7.  On September 2, 2011, the entity representing Ms Nye in her Social Security claim made a partial payment to Reliance in the amount of $41,584.08.  *See id.* at SOF No. 11; *see also* Ex. C to Pope Aff. (Docket No. 19, Att. 5) (referencing "payment made on 9/2/2011" in amount of $41,584.08).  This partial payment reduced the balance of the overall overpayment to $24,849.30.  *See id.*

8.  On February 27, 2012, Reliance identified another error, in that Ms. Nye's Gross Monthly Benefit had not been properly adjusted.  *See* SOF No. 13 (Docket No. 20) (citing Ex. D to Pope Aff. (Docket No. 19, Att. 6) (February 27, 2012 letter from Matrix Absence Management, Inc. ("Matrix"), the Policy's claims administrator,[5] to Ms. Nye, discussing "an error in your current gross monthly earnings, per the [P]olicy.")).  Specifically, as a Class 1 employee, Ms. Nye's Gross Monthly Benefit should have been based on 50% of the Covered Monthly Earnings after 18 months of Total Disability.  Instead, it had been calculated at 60% after 18 months.  *See id.*  As a result, an *additional* overpayment of $12,732.42 existed, for a total overpayment of $37,581.72.  *See id.*; *see also* Ex. B to Cannon Aff. (Docket No. 32, Att. 2) (February 27, 2012 entry on "Claim Report" indicating "CME Correction Calculation" and

---

the DSSD offset.  Please update the Other Income link to reflect Full Family offset integration in accordance with the group policy. . . . .  As a result, the claim is ocverpaid by $70,933.38.  The claimant is also entitled to an attorney fee credit of $4,500.00.  Therefore, the overpayment is reduced to $66,433.38.  Going forward, the claimant's NMB is $1,188.00 (pre-tax). . . . .

Ex. B to Cannon Aff. (Docket No. 32, Att. 2).

[5]  Matrix was originally named as a defendant in this action.  On December 8, 2014, the parties stipulated to Matrix's dismissal with prejudice.  *See* Stip. (Docket No. 21).

**REPORT AND RECOMMENDATION - 6**

stating in part: "There is an additional OP in the amount of $12,732.42 due to CME correction, this amount has been added to the previous OP amount (due to PSSD & DSSD).").

9.      On July 10, 2012, Mr. Cannon – on behalf of Ms. Nye –  requested "all documents, records, and or other information relevant to Ms. Nye's claim" from Matrix.  *See* Ex. A to Cannon Aff. (Docket No. 32, Att. 1).

10.     On July 19, 2012, Matrix provided Mr. Cannon with the "Claim Report" for Ms. Nye.  *See* Ex. B to Cannon Aff. (Docket No. 32, Att. 2).

11.     On August 23, 2012, Mr. Cannon responded to Matrix's February 27, 2012 letter, appealing the latter's "decision regarding overpayment and seek[ing] a review and redetermination."  Ex. C to Cannon Aff. (Docket No. 32, Att. 3).  Mr. Cannon claimed that "[t]his appeal is based upon the company errors which have left Ms. Nye in a very difficult financial position," before going on to say:

> Ms. Nye has relied upon the company's computations and analysis to her extreme financial det[riment].  She has reimbursed the insurance company for her funds, yet the carrier has demanded and is forcibly collecting her minor children's payments too.  Please correct all computations and reimburse Ms. Nye in full, among other appropriate relief.

*Id*.

12.     On November 2, 2012, Reliance discovered that the earlier change in Covered Monthly Earnings should have occurred on March 6, 2011, not March 6, 2010 as previously calculated in February 2012 – resulting this time in an underpayment of $8,994.92.  *See* SOF No. 14 (Docket No. 20).  Applying the underpayment ($8,994.92) to the then-pending overpayment balance ($37,581.72) reduced the actual overpayment amount to $28,586.80.  *See id*.  Even so, Reliance contends that, "as a courtesy to [Ms. Nye]," it decided not to recover the overpayment

**REPORT AND RECOMMENDATION - 7**

based on the calculation of Covered Monthly Earnings, thus reducing the balance Ms. Nye owed

to Reliance from $28,586.80 to $24,849.30.  *See id*; *see also* Ex. C to Pope Aff. (Docket No. 19,

Att. 15) (November 19, 2012 letter from Reliance to Mr. Cannon, stating in part: "Unfortunately,

the use of March 6, 2010 was incorrect as it did not encompass the entire 18-month period.  The

*Covered Monthly Earnings* percentage change should have occurred on March 6, 2011.  Based

on these events, RSL, at this time, has decided to not pursue the overpayment amount in regards

to Ms. Nye's *Covered Monthly Earnings* percentage change.").

13. On November 19, 2012, Reliance communicated the findings of its independent

review to Mr. Cannon, acknowledging that (1) its original decision regarding an overpayment of

Ms. Nye's Monthly Benefits as to her Covered Monthly Earnings "was calculated incorrectly,"

but (2) the calculation regarding Ms. Nye's Social Security Disability benefits "was correct," and

(3) "an outstanding balance of $24,849.30 remains."  *See* Ex. C to Pope Aff. (Docket No. 19,

Att. 15).[6]  Further, Reliance denied Mr. Cannon's August 23, 2012 request for relief, reasoning:

> In your correspondence dated August 23, 2012, you requested that RSL "[p]lease
> correct all computations and reimburse Ms. Nye in full."  You also expressed your
> client's frustration as "[s]he has reimbursed the insurance company for her funds, yet
> the carrier has demanded and is forcibly collecting her minor children's payments
> too."  RSL sympathizes with any confusion that this situation may have caused Ms.
> Nye, however, the policy enumerates in the *Other Income Benefits* provision that
> RSL can offset Ms. Nye's dependant's DSSD benefits from her *Monthly Benefit*
> amount.
>
> As stipulated in the correspondence dated February 27, 2012, please have Ms. Nye
> send her reimbursement by check or money order, in the amount off $24,849.30,
> made payable to Reliance Standard Life Insurance Company to repay the
> overpayment on her claim.  Please be sure to include the claim number on the check

---

[6]  The November 19, 2012 letter actually states that $24,846.30 (not $24,849.30) remains
outstanding in its third full paragraph.  *See* Ex. C to Pope Aff. (Docket No. 19, Att. 15).  The
Court presumes this is simply a misstatement given the factual backdrop leading to this point, in
addition to the fact that the correct $24,849.30 is referenced elsewhere in the letter.  *See id*.

**REPORT AND RECOMMENDATION - 8**

or money order.  Otherwise, RSL will continue to apply Ms. Nye's *Monthly Benefit* of $440.50 to the overpayment until it is recovered.

We regret that our decision could not have been more favorable to Ms. Nye however, we are limited by the provision of the Policy.  Please be advised that our claim decision is now final; as your client has now exhausted any administrative remedies available to her under the terms of the Policy.

*Id*.

14.     On March 14, 2013, Mr. Cannon noted his "disagree[ment] with the results of Reliance['s] findings" in a letter to Reliance, while again "request[ing] all materials the company used in rendering its denial."  Ex. D to Cannon Aff. (Docket No. 32, Att. 4).  Mr. Cannon also cited legal authority which he said "will guide the Idaho Federal District Court awarding Ms. Nye an amount equal to all withheld funds, her attorney fees and costs, along with the prospects of exemplary damages."  *Id*.

15.     On April 19, 2013, Reliance responded to Mr. Cannon's March 14, 2013 letter, advising him that (1) its internal guidelines permit only one administrative appeal, (2) the appeal was concluded, and (3) its decision to uphold the initial denial was communicated to him on June 29, 2012.  *See* Ex. E to Cannon Aff. (Docket No. 32, Att. 5).[7]  Still, Reliance did enclose a "complete claim file for Ms. Nye."  *Id*.

16.     Reliance has continued to reduce the overpayment by withholding the monthly benefit of $440.00 per month in accordance with the Policy's terms.  *See* SOF No. 15 (Docket No. 20).  During that time, the overpayment balance has decreased to approximately $8,000.00 (as of the filing of Reliance's Motion for Summary Judgment).  *See id*.  Reliance intends to continue withholding the monthly benefit until the overpayment is erased.  *See id*.

---

[7]  The Court could not locate the referenced June 29, 2012 correspondence in the record. Moreover, that date is not mentioned in Reliance's Statement of Undisputed Facts.  Regardless, this fact is not disputed by Ms. Nye or her attorney, Mr. Cannon.

**REPORT AND RECOMMENDATION - 9**

17.     On December 12, 2013, Ms. Nye sued in Idaho state court.  *See* Compl. (Docket No. 1, Att. 1).  Ms. Nye's Complaint references Reliance's June 6, 2011 letter and Matrix's February 27, 2012 letter and the alleged overpayments stated therein.  *See id*. at ¶¶ VI-VII.  As to each, Ms. Nye contends that Reliance's withholding of monthly benefits ($13,655.50 as of December 12, 2013) is "wrongful and prejudicial . . . and is a violation and breach of her contract for Long Term Disability" as well as "a violation of Contract Rules and her rights under ERISA."  *Id*.; *see also id*. at ¶ IX ("WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally . . . [f]or benefits wrongfully withheld from Plaintiff in the amount of $13,655.50, accruing monthly.").

18.     On January 21, 2014, Reliance removed the case to this Court pursuant to 28 U.S.C. § 1441(c), as an action arising under federal law.  *See* Not. of Removal (Docket No. 1).

19.     On December 3, 2014, Reliance filed the pending Motion for Summary Judgment, arguing that the Policy permits the repayment of overpaid benefits through a reduction in monthly benefits.  *See* Mem. in Supp. of MSJ, pp. 1-2 (Docket No. 19, Att. 1) ("Under the plain language in the Policy, if a benefit is overpaid 'the overpayment must be repaid to [Reliance].' Moreover, the Policy provides that Reliance 'may reduce the Monthly Benefit' to recover any overpayment.'").  In short, Reliance contends that it is legally entitled to a reduction in Ms. Nye's monthly benefit payments until the outstanding overpayment amount is satisfied.

## II.  DISCUSSION

The several twists and turns of this dispute described above present a somewhat convoluted backdrop.  Even so, the issues presented here are precise enough: (1) can Reliance offset/reduce Ms. Nye's monthly long term disability benefit payments in an amount equal to her

**REPORT AND RECOMMENDATION - 10**

Primary and/or Dependent Social Security awards? and, relatedly, (2) can Reliance recover the overpayment of monthly long term disability benefits (owing to such after-the-fact awards) via a reduction/withholding of the monthly benefit payment itself?  Reliance says yes, having withheld and continuing to withhold Ms. Nye's monthly benefit until the overpayment amount is accounted for in full.  *See* Mem. in Supp. of MSJ, pp. 5-9 (Docket No. 19, Att. 1).  Ms. Nye does not dispute that the Plan/Policy seems to permit Reliance's specific actions; instead, she argues that such actions are not permitted by equitable principles found in applicable case law.  *See* Resp. to MSJ, p. 2 (Docket No. 26) ("Plaintiff does not contend that the Policy's provisions do not provide for a reduction of her monthly benefit to recoup past overpayments; however, Plaintiff disagrees that the law provides that the Plan's terms control in all circumstances where an overpayment has been made where the mistake was no fault of the plan participant, especially when the participant has become accustomed to the monthly benefit payments and to withhold the same creates substantial hardship for the plan participant.").

**A.    Legal Standards**

      1.    <u>Standard of Review Under ERISA</u>

Although Ms. Nye's Complaint does not assert a specific cause of action per se, she obviously seeks to recover benefits she believes are due to her and remain unpaid under the terms of the Plan/Policy.  *See* Compl., ¶¶ VI-VII (Docket No. 1, Att. 1) ("[S]uch withholding has been, and is wrongful and prejudicial to the Plaintiff and is a violation and breach of her contract for Long Term Disability. . . . .  Such breaches are a violation of Contract Rules and her rights under ERISA and have directly caused Plaintiff to suffer damages . . . .").  In this respect, then, the claim or claims contained within Ms. Nye's Complaint are governed by federal law – i.e.,

**REPORT AND RECOMMENDATION - 11**

ERISA.  *See* 29 U.S.C. § 1132(a)(1)(B).  "In actions challenging denials of benefits pursuant to

29 U.S.C. § 1132(a)(1)(B), the district court reviews de novo 'unless the benefit plan gives the

administrator or fiduciary discretionary authority to determine eligibility for benefits or to

construe the terms of the plan.'"  *Cady v. Hartford Life & Accidental Ins. Co.*, 930 F. Supp. 2d

1216, 1223 (D. Idaho 2013) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115

(1989)).  "If the plan unambiguously confers discretionary authority, then the standard of review

shifts to abuse of discretion."  *Cady*, 930 F. Supp. 2d at 1223 (citing *Firestone*, 489 U.S. at 115;

*Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999)).

      Here, Reliance concedes that "[t]he Plan in this case does not contain an explicit grant of

discretionary authority to Reliance" and, "[t]herefore, the de novo standard of judicial review

applies."  Mem. in Supp. of MSJ, p. 6 (Docket No. 19, Att. 1) (citing *Kearney v. Std. Ins. Co.*,

175 F.3d 1084, 1089 (9th Cir. 1999)).  Under the de novo standard of review, the Court gives no

deference to Reliance's decisions regarding Ms. Nye's benefits; rather, the Court evaluates

whether Reliance correctly or incorrectly denied benefits, cross referenced against the summary

judgment standard.  *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006).

      2.   <u>Summary Judgment Standard</u>

      Summary judgment is appropriate where a party can show that, as to any claim or

defense, "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  One of the principal purposes of the

summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex

Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is

instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated

**REPORT AND RECOMMENDATION - 12**

and prevented from going to trial with the attendant unwarranted consumption of public and

private resources." *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary judgment."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute

as to a *material* fact – a fact "that may affect the outcome of the case."  *Id*. at 248.[8]

The evidence must be viewed in the light most favorable to the non-moving party, and

the Court must not make credibility findings.  *See id*. at 255.  Direct testimony of the non-

movant must be believed, however implausible.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1159

(9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences

from circumstantial evidence.  *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine

dispute as to material facts.  *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).  To

carry this burden, affirmative evidence is not required.  Instead, the moving party may simply

point out the absence of evidence to support the nonmoving party's case.  *See Fairbank v.

Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).  This then shifts the burden to the

non-moving party to produce evidence sufficient to support a jury verdict in her favor.  *See*

---

[8]  Reliance suggests that the Court need not view its Motion for Summary Judgment through FRCP 56's lens.  *See* Mem. in Supp. of MSJ, pp. 5-6 (Docket No. 19, Att. 1) ("'A motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.'") (quoting *Nolan v. Heald Coll.*, 551 F.3d 1148, 1154 (9th Cir. 2009).  However, this maxim was described in *Heald* in the context of considering a case under the more lenient abuse of discretion standard.  *See Heald*, 551 F.3d at 1154 ("We have previously held, however, *that where the abuse of discretion standard applies in an ERISA benefits denial case,* a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.") (internal quotation marks and citation omitted).  This case, however, centers upon the de novo standard, not the abuse of discretion standard.

**REPORT AND RECOMMENDATION - 13**

*Devereaux*, 263 F.3d at 1076.  The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists.  *Celotex*, 477 U.S. at 324.

**B.      Issue No. 1: Reliance Can Offset/Reduce Ms. Nye's Monthly Long Term Disability Benefit Payments in an Amount Equal to Her Primary and/or Dependent Social Security Awards**

ERISA requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument," and an administrator must act "in accordance with the documents and instruments governing the plan" insofar as they accord with the statute.  29 U.S.C. §§ 1102(a)(1), 1104(a)(1)(D).  "Each such plan must (1) provide a policy and a method for funding the plan, (2) describe a procedure for plan operation and administration, (3) provide a procedure for amending the plan, and (4) specify a basis for payments to and from the plan." *Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1441-42 (9th Cir. 1995) (internal quotation marks and citation omitted); *see also* 29 U.S.C. § 1102(b).  ERISA's statutory scheme "is built around reliance on the face of written plan documents" and reflects ERISA's principal function: to "protect contractually defined benefits."  *US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537, 1548 (2013) (internal quotation marks and citations omitted).

Here, under its plain language, the Plan provides that "Other Income Benefits" received by a claimant are to be subtracted from the claimant's monthly "Benefit Amount."  *See supra*. Importantly, the Plan defines "Other Income Benefits" to include primary and dependent "disability or Retirement Benefits under the United States Social Security Act."  *Id*.  Courts within the Ninth Circuit have consistently enforced nearly-identical offset provisions relating to a claimant's receipt of primary and dependent Social Security benefits.  *See Franks v. Aetna Life*

**REPORT AND RECOMMENDATION - 14**

*Ins. Co.*, 2012 WL 5372578, *4 (N.D. Cal. 2012) (granting defendant administrator's motion for summary judgment, finding that plan documents "conclusively demonstrate that the policy contains offset provisions for other income such as social security benefits."); *Ayers v. Life Ins. Co. of North America*, 869 F. Supp. 2d 1248, 1267 n.9 (D. Or. 2012) ("[T]he terms of the Policy allow LINA to offset monthly benefits by the assumed receipt of other income, including SDDI benefits.  Therefore, LINA had the right to withhold LTD benefits regardless of whether Ayers applied for or received SSDI . . . ."); *Mayhew v. Hartford Life and Acc. Ins. Co.*, 822 F. Supp. 2d 1028, 1035 (N.D. Cal. 2011) (acknowledging lack of Ninth Circuit authority on point (*but see Bilyeu v. Morgan Stanley Long Term Disability Plan*, discussed *infra*), but still holding that "the express terms of the Plan support offsetting the DSSD benefits" and "to hold that Mayhew's DSSD benefits do not constitute a benefit for loss of income would render this language entirely superfluous.").

With all this in mind, the Court recommends a holding that the express terms of the Plan allow for Ms. Nye's monthly long term disability benefit payments to be offset by her Social Security awards (primary and dependent).  However, such a holding does not mean *ipso facto* that Reliance is justified in withholding Ms. Nye's monthly long term disability benefit payments to recover in full an overpayment of benefits due to those same later-in-time awards. The Court addresses this more nuanced issue below.

**C.    Issue No. 2: Reliance Can Recover an Overpayment of Benefits Resulting From Social Security Awards By Reducing/Withholding Monthly Long Term Disability Benefit Payments**

Reliance points out that it is not asking Ms. Nye to pay *any* money to Reliance from her existing personal assets, highlighting the fact that the undisputed overpayment resulting from her

**REPORT AND RECOMMENDATION - 15**

Social Security awards is being satisfied by reducing/withholding benefits that have not yet been

paid and, therefore, were never in Ms. Nye's possession.  *See* Mem. in Supp. of MSJ, p. 8

(Docket No. 19, Att. 1).  As before, Reliance notes that this is expressly permitted by the Plan

and Policy language.  *See id*.  Ms. Nye argues that the proposition is not so black and white,

contending that, for equitable reasons, her monthly long term disability benefit payments should

not be reduced or withheld when the overpayment was the result of a mistake for which she had

no fault.  *See* Resp. to MSJ, pp. 2-4 (Docket no. 26).

Ms. Nye's arguments and the cases she relies upon are, however, insufficient to carry the

day on this issue.  First, it goes too far to say that the overpayment in question here was the result

of Reliance's (or anybody's) mistake.[9]  The overpayment arose because Ms. Nye was awarded

Social Security benefits after already receiving monthly long term disability benefit payments

from Reliance that had not estimated and subtracted out such benefits.  Although the Plan/Policy

specifically allowed for such an upfront accounting to stem any overpayment issues, pursuant to

the parties' October 17, 2009 Reimbursement Agreement, Reliance agreed to issue Ms. Nye's

full long term disability benefit payment without deducting any estimated benefits, provided that

Ms. Nye (1) agree to reimburse Reliance for any resulting overpayment, and (2) agree that

Reliance may withhold her monthly long term disability benefit payments until the resulting

overpayment is recovered in full (in the event that she does not reimburse Reliance for the full

---

[9]  To be clear, a separate argument exists that Reliance made a mistake when it overpaid disability benefits for a period of time when it failed to reduce the Monthly Benefit as required under the Policy after benefits are paid for 18 months.  *See supra*.  However, when Reliance realized its mistake, it did not insist that Ms. Nye repay those amounts.  *See id*.  Therefore, any such mistake is not at issue here.

**REPORT AND RECOMMENDATION - 16**

amount).  *See supra*.[10]  Ms. Nye made a choice to agree to those conditions – she knew, before

there was any overpayment, that if at some later date she received Social Security payments, the

money had to be repaid or Reliance had the right to subtract the overpayment from the monthly

benefit.  Moreover, the overpayment calculations took place and were communicated to Ms. Nye

soon after the Social Security benefits were formally awarded to Ms. Nye.  *See id.*[11]  In other

words, the overpayment was not a mistake as Ms. Nye now contends; it was an event

contemplated by the Plan documents and, even, addressed by the parties in their 2009

Reimbursement Agreement – before Ms. Nye was ever awarded Social Security benefits and,

thus, before any overpayment.[12]

---

[10]  These provisos to the Reimbursement Agreement are consistent with the Policy's "Benefit Provisions" which provide in relevant part:

> If [Reliance] ha[s] overpaid the Monthly Benefit for any reason, the overpayment must be repaid to us.  At our option, we may reduce the Monthly Benefit or ask for a lump sum refund.  If we reduce the Monthly Benefit, the Minimum Monthly Benefit, if any, as shown on the Schedule of Benefits page, would not apply.

*See supra* (citing Def.'s SOF No. 7 (quoting Ex. A to Pope Aff. at p. 9.0 (Docket No. 19, Att. 3))).

[11]  For example, while the Social Security Administration concluded that Ms. Nye was eligible for disability benefits beginning in June 2009, that decision was not made until May 28, 2011.  *See supra*.  Reliance's June 6, 2011 letter followed.  *See id.*  Likewise, Reliance's August 15, 2011 letter followed the Social Security Administration's June/July 2011 award notices for Ms. Nye's dependents.  *See id.*  Therefore, it would be misleading to say – as Ms. Nye does in her affidavit in opposition to Reliance's Motion for Summary Judgment – that "Reliance Standard paid me disability benefits for more than two years before it stopped all payments because *it had failed to offset funds I received from Social Security Disability*."  Nye Aff., ¶ 4 (Docket No. 27) (emphasis added).

[12]  These facts also distinguish this action from the non-Ninth Circuit cases relied upon by Ms. Nye to support her equitable argument that she should be allowed to retain all of her monthly long term disability payments without reduction.  *See* Opp. to MSJ, pp. 2-4 (Docket No. 26) (citing *Phillips v. Maritime Ass'n-I.L.A. Local Pension Plan*, 194 F. Supp. 2d 549 (E.D. Tex.

**REPORT AND RECOMMENDATION - 17**

Second, any argument that *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083 (9th Cir. 2012), supports Ms. Nye's position here, is misplaced.[13]  In *Bilyeu*, the Ninth Circuit reviewed a claim of a long term disability plan participant ("Bilyeu") against the plan, with Bilyeu challenging the termination of benefits and the plan's administrator, Unum Life Insurance Company ("Unum"), counterclaiming for restitution of overpaid benefits.  *See id.* at 1086-88.  Similar to the instant action, Unum paid Bilyeu benefits pursuant to Bilyeu's earlier agreement to reimburse Unum "any overpayment resulting from my receipt of benefits from other sources, as outlined in my policy," while acknowledging that Unum "may reduce future payments under the policy in order to recover the overpaid benefits" in the event Bilyeu failed to reimburse Unum in the overpayment's amount.  *See id.* at 1090.  Bilyeu subsequently received social security disability benefits, but did not reimburse Unum, leading to Unum's counterclaim for reimbursement of $36,597.82 in overpaid benefits.  *See id.* at 1091.

Importantly, Unum had already terminated Bilyeu's benefits under the plan provision which carried a limit of 24 months of disability benefits due to mental illness (leading to Bilyeu's underlying claim to reinstate benefits).  *See id.* at 1086-87.  Hence, at the time of its counterclaim Unum had no means of offsetting the overpayment against future long term

---

2001); *Porter v. Hartford Life and Accident Ins. Co.*, 609 F. Supp. 2d 817 (E.D. Ark. 2009); *Phillips v. Brink's Co.*, 632 F. Supp. 2d 563, 573 (W.D. Va. 2009)).  In those cases, the overpayments were the result of not only a mistake, but of the plan administrator's breach of fiduciary duty owed to the plaintiff participants – in particular, the length of time it took to detect the overpayments.  Here, there is no such negligence on Reliance's part.  Further, the plans under consideration in these cases did not specifically allow for recoupment of overpaid benefits; here, the Plan documents unambiguously do by way of a reduction in Monthly Benefits.

[13]  Mr. Cannon's March 14, 2013 letter to Reliance references *Bilyeu* as controlling authority on the issue of "awarding Ms. Nye an amount equal to all withheld funds" (in addition to "her attorney fees and costs, along with the prospects of exemplary damages").  *See supra* (citing Ex. D to Cannon Aff. (Docket No. 32, Att. 4)).  However, Ms. Nye's opposition to Reliance's Motion for Summary Judgment does not cite to *Bilyeu*.

**REPORT AND RECOMMENDATION - 18**

disability payments.  Instead, through its counterclaim, Unum sought to recover the overpayment directly from Bilyeu, asserting a claim for equitable relief under ERISA (in the form of an equitable lien), as well as a claim for breach of contract.  *See id*. at 1087-88.  In vacating the district court's entry of summary judgment in Unum's favor, the Ninth Circuit examined the United States Supreme Court's analysis of equitable liens in *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356 (2006).  *See id*. at 1091.

In *Sereboff*, the Supreme Court held that a provision of an ERISA plan calling for recovery of funds where the beneficiary had also recovered from a third party was an "equitable lien by agreement," and an action to enforce it was "equitable" in nature, even though it shared many of the characteristics of a legal action for breach of contract.  *See id*. at 362-63.  The Court distinguished this holding from several of its previous decisions by noting that, in the case before it, the funds sought by the trustee (settlement proceeds) were "specifically identifiable" and "within the possession and control" of the beneficiaries.  *Id*.

In turn, the Ninth Circuit in *Bilyeu* interpreted *Sereboff* to establish three criteria for securing a claim for equitable lien by agreement in an ERISA action: first, a promise by the beneficiary to reimburse the fiduciary for benefits paid under the plan in the event of a recovery from a third party; second, a reimbursement agreement that specifically identifies a particular fund, distinct from the beneficiary's general assets; and third, the funds being specifically identified by the fiduciary must be within the possession and control of the beneficiary.  *Bilyeu*, 683 F.3d at 1092-93.[14]  Applying these elements, the Ninth Circuit ultimately concluded that

---

[14]  To date, *Bilyeu* departs from every other Circuit in holding that a plan must trace any overpayment to specific funds in the recipient's possession in order to recover them. Apparently, the Supreme Court recently granted certiorari from an Eleventh Circuit decision to

**REPORT AND RECOMMENDATION - 19**

Unum could not enforce an equitable lien against Bilyeu's general assets – largely because the specifically-identified funds were no longer in Bilyeu's possession, as she had already spent the overpaid benefits.[15]

The narrow precedent of *Bilyeu* is of limited use when resolving Reliance's Motion for Summary Judgment and its attendant facts. Preliminarily, unlike the facts in *Bilyeu* and *Sereboff*, Reliance has not asserted an equitable lien or any other claim for that matter against Ms. Nye. This is made apparent not only by the fact that there is no actual pleading from Reliance in which it asserts any claim against Ms. Nye to account for the overpayment of long disability benefits, but also because Reliance is not attempting to recover any money from Ms. Nye's assets *vis à vis* the overpayment. Had Ms. Nye's long term disability payments ceased for whatever reason or had already been paid out, and Reliance *then* tried to proactively recover any

---

resolve the split among Circuits and the lynchpin issue in *Bilyeu* – whether an ERISA beneficiary can recover money paid to a plan participant under an equitable lien by agreement theory when the participant has already spent the particular funds. *See Bd. of Trustees of Nat. Elevator Indus. Health Ben. Plan v. Montanile*, 593 F. App'x 903, 908 (11th Cir. 2014), cert. Granted, No. 14-723, 2015 WL 1400864 (Mar. 30, 2015).

[15] Going through the elements, the Ninth Circuit found that the first element was "clearly satisfied given that Bilyeu did "not dispute that she promised to reimburse Unum for an overpayment of long-term disability benefits arising from her receipt of benefits from other sources, including social security disability benefits." *Bilyeu*, 683 F.3d at 1093. Less clear was whether the second criterion was met, with the court concluding that "the overpaid disability benefits are not a particular fund, but a specific amount of money encompassed within a particular fund – the long-term disability benefits Unum paid to Bilyeu. . . . . The overpayment has never existed as a distinct object or fund." *Id*. Regardless, the court determined that any attempt to identify the particular fund as, simply, the overpaid benefits operated as an end-run around the congressional prohibition on assignment and attachment of social security benefits. *See id*. at 1093-94. Finally, as to the third element (and assuming satisfaction of the second element), the court concluded that Bilyeu had spent the overpaid benefits such that Unum would be "seeking a judgment requiring Bilyeu to pay money out of her general assets" – "'the imposition of personal liability,' rather than enforcement of an 'equitable lien on particular property.'" *Id*. (citing *Sereboff*, 547 U.S. at 362).

**REPORT AND RECOMMENDATION - 20**

intervening overpayment amount through litigation, *Bilyeu's* reach might well be tested, perhaps to Ms. Nye's ultimate benefit.  But that is not the case here.  This record involves Reliance reducing Ms. Nye's existing and ongoing Monthly Benefits per the Plan documents and Reimbursement Agreement.  Simply put, there is no claim of an equitable lien that this Court must scrutinize.  As a result, *Bilyeu* does not apply.[16]

With all this in mind, the Court circles back to the Plan, recognizing that its clear terms control over Ms. Nye's understandable pleas for equitable relief here.  As the Supreme Court recently counseled in *McCutchen*:

> The result we reach, based on the historical analysis our prior cases prescribe, fits lock and key with ERISA's focus on what a plan provides.  The section under which this suit is brought does not, after all, authorize appropriate equitable relief at large; rather, it countenances only such relief as will enforce the terms of the plan or the statute, § 1132(a)(3).  That limitation reflects ERISA's principal function: to protect contractually defined benefits.  The statutory scheme, we have often noted, is built around reliance on the face of written plan documents.  Every employee benefit plan shall be established and maintained pursuant to a written instrument . . . and an administrator must act in accordance with the documents and instruments governing the plan insofar as they accord with the statute . . . .  The plan, in short, is the center of ERISA.  And precluding McCutchen's equitable defenses from overriding plain contract terms helps it to remain there.

*McCutchen*, 133 S.Ct. at 1548 (internal quotation marks and citations omitted).  The Court acknowledges that there is an equitable pull that leans the way of Ms. Nye because of the economic strain into which she has been placed.  But the equities in this case have competing

---

[16]  Separately, though *Bilyeu's* logic unquestionably assists claimants when insurers bring actions to recover overpayments of benefits, its impact could theoretically be detrimental to claimants in the long run – at least in the Ninth Circuit.  That is, where disability plans allow for the upfront offsetting of estimated social security benefits, insurers may now be reluctant to enter into a reimbursement agreement with a claimant (waiving its right to offset such benefits in exchange for the claimant agreeing to reimburse the insurer for any overpayment and/or acknowledging that the insurer can reduce monthly payment amounts to account for any overpayment) knowing that, under *Bilyeu*, they may not be able to recover any overpayment upon such an award.

claims, given the fact of the prior *over*payments, and the Plan at issue in this action permits Reliance to do what it has done and what it continues to do – recover an overpayment of benefits resulting from social security awards by reducing/withholding monthly long term disability benefit payments.  Reliance's Motion for Summary Judgment should therefore be granted.

## III.  RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendant Reliance Standard Life Insurance Company's ("Reliance") Motion for Summary Judgment (Docket No. 19) be GRANTED.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days. . ., unless the magistrate or district judge sets a different time period."  Additionally, the other party "may serve and file a response, not to exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

DATED:  **August 5, 2015**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**REPORT AND RECOMMENDATION - 22**